# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GINEINE CONOVER, | CASE NO. 3:14-cv-01775-GBC |
| Plaintiff, | (MAGISTRATE JUDGE COHN) |
| v. | |
| CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY, | MEMORANDUM |
| Defendant. | Docs. 1, 5, 6, 12, 15 |

## **MEMORANDUM**

### I.   Introduction

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying the application of Plaintiff Gineine Conover ("Plaintiff") for supplemental security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act, 42 U.S.C. §§401-433, 1382-1383 (the "Act").

The Court cannot conclude that substantial evidence supports the denial of benefits. Plaintiff established medically determinable vision impairments. An administrative law judge ("ALJ") concluded that Plaintiff was "limited to occupations which do not require exposure to dangerous machinery and unprotected heights, peripheral visual acuity, depth perception, or nighttime

operation of a motor vehicle during working hours." The ALJ purported to rely on Vocational Expert ("VE") testimony to conclude that a claimant with these limitations could perform Plaintiff's past relevant work. An ALJ must include all established limitations in a hypothetical to a VE. However, the ALJ asked the VE only two hypotheticals. The first hypothetical included no visual limitations. The VE testified that, with no visual limitations, Plaintiff could perform past work. The second hypothetical included limitations of "a loss of peripheral and depth perception in both eyes and basically an inability to have any near or far visual acuity." The VE testified that, with those limitations, there was no work Plaintiff could perform. Thus, neither hypothetical includes the specific limitations the ALJ found. The hypothetical most similar to the ALJ's limitations indicated that Plaintiff could not perform work. This precludes meaningful review. For the foregoing reasons, the Court will grant Plaintiff's appeal, vacate the decision of the Commissioner, and remand for further proceedings.

## II. Procedural Background

On May 16, 2011, Plaintiff filed an application for DIB and SSI under the Social Security Act, 42 U.S.C. §§401-433, 1382-1383 (the "Act"). (Tr. 121-35). On June 28, 2011, the Bureau of Disability Determination denied these applications (Tr. 80-99), and Plaintiff filed a request for a hearing on August 25, 2011. (Tr. 109-15). On December 5, 2012, an ALJ held a hearing at which

Plaintiff—who was represented by an attorney—and a vocational expert ("VE") appeared and testified. (Tr. 47-79). On January 22, 2013, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 9-21). On February 25, 2013, Plaintiff filed a request for review with the Appeals Council (Tr. 7-8), which the Appeals Council denied on July 23, 2014, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr. 1-6).

On September 12, 2014, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal the decision of the Commissioner. (Doc. 1). On November 12, 2014, the Commissioner filed an answer and administrative transcript of proceedings. (Docs.5, 6). On June 22, 2015, Plaintiff filed a brief in support of her appeal ("Pl. Brief"). (Doc. 12). On July 27, 2015, Defendant filed a brief in response ("Def. Brief"). (Doc. 15). On June 26, 2015, the parties consented to transfer of this case to the undersigned for adjudication. (Doc. 13, 14). The matter is now ripe for review.

## II.     Standard of Review

When reviewing the denial of disability benefits, the Court must determine whether substantial evidence supports the denial. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a

large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In other words, substantial evidence requires "more than a mere scintilla" but is "less than a preponderance." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

### III. Sequential Evaluation Process

To receive disability or supplemental security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The Act requires that a claimant for disability benefits show that he has a physical or mental impairment of such a severity that:

> He is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step evaluation process to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520; *see also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed. *See* 20 C.F.R. § 404.1520. The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"); (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. §§ 404.1520, 416.920. Before moving on to step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e).

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four. If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir.

1993). The ultimate burden of proving disability within the meaning of the Act lies with the claimant. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

## IV. Relevant Facts in the Record

Plaintiff was born on September 20, 1973 and was classified by the Regulations as a younger individual through the date of the ALJ decision. (Tr. 20). 20 C.F.R. § 404.1563. Plaintiff graduated from college and has past relevant work as a cleaner, a medical assistant, a convenience store cashier, and a switchboard operator. (Tr. 19, 52).

In February of 2011, Plaintiff presented to primary care physician Dr. Armando Sallavanti, D.O., with complains of headache, dry eyes, dry mouth, and depression.[1] (Tr. 238). She also complained of joint pain, muscle weakness, and stiffness. (Tr. 238). Plaintiff was assessed to have a deteriorated upper respiratory infection and was prescribed antibiotics. (Tr. 239).

On March 11, 2011, Plaintiff had an ophthalmology examination with Dr. Arthur Jordan, Sr., O.D. (Tr. 258). She was employed as a medical assistant. (Tr. 258). She reported ocular symptoms of blurred vision, eye strain, and glare/halos "just in the last month," along with itching, burning, tearing, redness, and headache. (Tr. 258). Plaintiff's vision was 20/25 in her right eye and 20/60 in her

---

[1] Prior to the relevant period, Plaintiff had also treated with Dr. Sallavanti for depression, anxiety, foot pain, and asthma. (Tr. 240-46).

left eye. (Tr. 262). Amsler sign was positive. (Tr. 262-63). Plaintiff had some edema. (Tr. 264). Plaintiff was referred for further consultation. (Tr. 263).

On March 15, 2011, Plaintiff had an evaluation with Dr. Randall Peairs, M.D., at the Northeastern Eye Institute. (Tr. 284). He authored a letter to Dr. Jordan, and noted:

> Examination today showed a vision of 20/25 in the right and 20/60 in the left. Her pressures were 14 and 15. Anterior segment exam was unremarkable. Fundus exam showed bilateral uveitis, the left greater than the right. She has vitreous cells. She has macular edema in the left eye. In the right eye there is some early trace fluid. Fluorescein angiography and OCT were performed. Interestingly, on the angiogram there was some hyperfluorescence of the disc. She does have some significant lower back pain.
>
> I reviewed the laboratory tests that Dr. Sallavanti had ordered, and there were no acute changes noted. I recommended some additional laboratory tests, especially an HLA 827. I gave her a subtenon injection of a steroid to the left eye today. Pending the results of her uveitis workup, I could consider further treatment. I hope this information is of value to you.

(Tr. 284). Subsequently, MRI of the brain was unremarkable except for an empty sella. (Tr. 256). Chest X-rays were negative. (Tr. 257).

On April 18, 2011, Plaintiff had a consultation with Dr. Matthew Levy, M.D., for empty sella syndrome and sicca syndrome. He noted that Plaintiff had "multiple symptoms consistent with sicca syndrome. Work-up to date has been negative. She may need an evaluation with a rheumatologist. (Tr. 211). He noted that "[e]mpty sella incidentally found on MRI. This is likely a congenital finding

with a normal functioning pituitary gland pushed along the edge of the sella. [Plaintiff's] symptoms aren't specific for a pituitary-axis hormone excess of deficiency and most people with an empty sella have normal pituitary function…No further work-up or imaging is necessary if her labs are essentially normal." (Tr. 211).

On April 20, 2011, Plaintiff presented to the emergency room at Moses Taylor hospital complaining of headaches. (Tr. 226). She reported that her symptoms began in January of 2011 and were associated with blurred vision. (Tr. 228). CT scan of the head was normal. (Tr. 230). About four hours after arrival, she was offered pain medication, but she refused and indicated she felt "well enough to go home." (Tr. 226). Outpatient follow-up was encouraged. (Tr. 226).

On April 25, 2011, Plaintiff presented to Dr. Juan C. Barrera, M.D., with complaints of severe headaches. (Tr. 215). Dr. Barrera described her history:

> Patient states that, about 3 months ago, she had onset of bilateral occipital headaches radiating to rest of the head, posterior cervical region, both shoulders, down the spine to lower back area and radiating to both hips. Headache is sharp, very severe, with an intensity of 10/1 0 on a scale 1/10. She also has associated photophobia, phonophobia and nausea but no vomiting. It is also accompanied by dizziness and poor balance to the point that she fell obvious in one occasion. Her headaches are of daily presentation, lasting 24 hours a day. She denies preceding visual phenomena. She also complains of associated numbness in both lower extremities. She may have poor concentration and word finding difficulty. She was given Toradol, but she had no improvement. When she was given other analgesics without relief. A brain MRI without contrast on April 21 of the current year revealed a normal brain and an empty sella. She

> was already seen by endocrinologist with normal hormonal testing. On April 20, the headache was so severe that she had to come to the emergency room where a CT head scan was negative. She was given intravenous medication which did not work. She is currently not taking any analgesics.

(Tr. 213). Examination indicated that her gait was "unsteady." (Tr. 214). Neurologic examination indicated "symmetric, round and reactive pupils . Fundoscopic examination was not performed to prevent photic stimulation. Visual fields to confrontation showed no gross deficits. Extraocular movements showed no gaze paresis or nystagmus." (Tr. 214). Dr. Barrera assessed Plaintiff to have "Suspected basilar migraine headaches. The association of bilateral occipital headaches with associated dizziness and poor balance, nausea, photophobia and phonophobia suggest this diagnosis, probable underlying cervical degenerative disc disease, probable underlying lumbar degenerative disc disease, [and] empty sella syndrome." (Tr. 214). He recommended imaging studies and prescribed Topamax and Fioricet. (Tr. 215).

On April 29, 2011, imaging of Plaintiff's head was "a somewhat suboptimal study secondary to patient motion" and indicated "left vertebral artery is dominant…. right vertebral artery is small in caliber." (Tr. 216). Imaging of Plaintiff's cervical spine indicated "[n]o disk herniation. No canal or neural foraminal narrowing. Straightening of the normal cervical lordosis. The vertebral bodies are normal in height at all levels. Minimal disk space narrowing is seen of

C4-5, which may be on a congenital basis. A small incidental hemangioma is seen in the Tl vertebral body." (Tr. 218). Imaging of Plaintiff's lumbar spine indicated "minimal bulging…with minimal degenerative disk disease…no significant canal nor neural foraminal narrowing…no evidence of a compression fracture or subluxation." (Tr. 219). Genetic testing for a risk factor for venous thrombosis showed no mutation. (Tr. 221).

On May 2, 2011, Plaintiff presented to the emergency room at Moses Taylor Hospital complaining of heavy vaginal bleeding and pain in her head, back, and body. (Tr. 231). She was "very loud, social, laughing [and] interacting with staff." (Tr. 234). Plaintiff was assessed to have an exacerbation of chronic pain syndrome and dysfunctional uterine bleeding. (Tr. 232). She was discharged with instructions to obtain a second opinion. (Tr. 232).

At ophthalmology follow-ups on May 12, 2011, and May 17, 2011, Plaintiff reported she was "improving." (Tr. 274, 276). She had less edema. (Tr. 276). Providers planned only to "observe" and have Plaintiff follow-up in two months. (Tr. 274, 276).

On June 6, 2011, Plaintiff had a consultation with rheumatologist Dr. Mark Cruciani. (Tr. 283). Examination indicated pain but no active synovitis. (Tr. 285). He assessed Plaintiff to have an "[a]utoimmune disorder that has presented in the

form of uvitis and what I feel is CNS vasculitis" and did "not feel this is rheumatoid arthritis." (Tr. 283).

On June 28, 2011, Dr. Mark Bohn, MD., reviewed Plaintiff's medical records and authored a medical opinion. (Tr. 83- 86, 92-95). He cited all of the above-described evidence. (Tr. 83). Dr. Bohn concluded that Plaintiff's allegations regarding the intensity, persistence, and functionally limiting effects of her symptoms were not substantiated by the objective medical evidence (Tr. 84, 93). He explained that she was able to get her children ready for school and go shopping. (Tr. 84).

On July 7, 2011, Plaintiff presented to Moses Taylor Hospital for permanent sterilization. (Tr. 298). Head, eyes, ears, nose, and throat examination was within normal limits. (Tr. 298).

On December 5, 2012, Plaintiff appeared and testified at a hearing before an ALJ. (Tr. 49). Plaintiff's counsel represented that she was unable to perform any work due to vision problems. (Tr. 51-52). Plaintiff's counsel represented that the record was complete and that Plaintiff had been unable to obtain further treatment due to a lack of insurance. (Tr. 50). Plaintiff testified that she had blurriness in both her right and left eyes. (Tr. 54). She testified that she had retained her driver's license with no restrictions. (Tr. 57). When asked if, "from April on, has your vision been blurry in both eyes?" she testified, "yes." (Tr. 59). She testified that

she had been working two jobs in January of 2011, but was laid off from one. (Tr. 68). She testified that she had received unemployment compensation up until the previous month. (Tr. 69). She testified that, while receiving unemployment, she certified she was capable of working full-time. (Tr. 70).

A vocational expert ("VE") also appeared and testified. The ALJ asked the VE two hypotheticals. (Tr. 74-76). The first hypothetical included no visual limitations. *Id.* The VE testified that, with no visual limitations, Plaintiff could perform past work. *Id.* The second hypothetical included limitations of "a loss of peripheral and depth perception in both eyes and basically an inability to have any near or far visual acuity." *Id.* The VE testified that, with those limitations, there was no work Plaintiff could perform. *Id.*

On January 22, 2013, the ALJ issued the decision. (Tr. 21). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 11, 2011, the alleged onset date, the alleged onset date. (Tr. 14). At step two, the ALJ found that Plaintiff's autoimmune disorder, obesity, bilateral retinal disorder, empty sella syndrome, obesity, and migraine headaches were medically determinable and severe. (Tr. 14). At step three, the ALJ found that Plaintiff did not meet or equal a Listing. (Tr. 15). The ALJ found that Plaintiff had the RFC to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is limited to occupations that require no more than occasional postural maneuvers, such as balancing, stooping, kneeling, crouching, and climbing on ramp and stairs. The claimant

>must avoid occupations that require climbing on ladders or crawling. She must avoid concentrated prolonged exposure to environments with excessive noise and vibration. The claimant is limited to occupations which do not require exposure to dangerous machinery and unprotected heights, peripheral visual acuity, depth perception, or nighttime operation of a motor vehicle during working hours.

(Tr. 15-16).

A step four, the ALJ found that Plaintiff could perform past relevant work. (Tr. 19). The ALJ purported to rely on VE testimony, writing that "the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity." (Tr. 20). Consequently, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 21).

### V.  Plaintiff Allegations of Error

Plaintiff asserts that the ALJ's decision lacks substantial evidence. (Pl. Brief). Plaintiff's brief focuses her appeal on the ALJ's credibility determination. (Pl. Brief). Defendant responds that the ALJ's credibility determination was supported by substantial evidence. (Def. Brief).

The ALJ concluded that Plaintiff was "limited to occupations which do not require exposure to dangerous machinery and unprotected heights, peripheral visual acuity, depth perception, or nighttime operation of a motor vehicle during working hours." (Tr. 15-16). The ALJ purported to rely on VE testimony to conclude that a claimant with these limitations could perform Plaintiff's past

relevant work. (Tr. 20). However, the ALJ asked the VE only two hypotheticals. (Tr. 74-76). The first hypothetical included no visual limitations. *Id.* The VE testified that, with no visual limitations, Plaintiff could perform past work. The second hypothetical included limitations of "a loss of peripheral and depth perception in both eyes and basically an inability to have any near or far visual acuity." The VE testified that, with those limitations, there was no work Plaintiff could perform.

Here, neither hypothetical includes the specific limitations the ALJ found. (Tr. 74-76). The hypothetical most similar to the ALJ's limitations indicated that Plaintiff could not perform work. *Id.* An ALJ must include all established limitations in a hypothetical to a VE. *See Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) ("A hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence"); (citing *Podedworny v. Harris*, 745 F.2d 210 (3d Cir.1984); *Wallace v. Secretary*, 722 F.2d 1150 (3d Cir.1983)). Thus, the ALJ's failure to include all established limitations precludes meaningful review. *Id.*

Although the parties did not brief this issue, the Court simply cannot determine whether substantial evidence supports this decision. As the Third Circuit explained in *Ventura v. Shalala*, 55 F.3d 900 (3d Cir. 1995):

> ALJs have a duty to develop a full and fair record in social security cases. *See Brown v. Shalala,* 44 F.3d 931, 934 (11th Cir.1995); *Smith v. Harris,* 644 F.2d 985, 989 (3d Cir.1981). Accordingly, an ALJ must secure relevant information regarding a claimant's entitlement to social security benefits. *Hess,* 497 F.2d at 841. In *Hess* we reasoned that "[a]lthough the burden is upon the claimant to prove his disability, due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails." *Id.* at 840.

*Id.* at 902. "It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel,* 530 U.S. 103, 111, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000).

The Court remands for the ALJ to produce substantial evidence supporting any step four decision. Because the Court remands on these grounds, it declines to address Plaintiff's other allegations of error. A remand may produce different results on these claims, making discussion of them moot. *See LaSalle v. Comm'r of Soc. Sec.*, No. CIV.A. 10-1096, 2011 WL 1456166, at *7 (W.D. Pa. Apr. 14, 2011).

## VII.    Conclusion

The Court finds that the ALJ's decision lacks substantial evidence because the ALJ failed to properly evaluate the vocational evidence. Pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner is vacated, and this case is remanded for further proceedings.

An appropriate Order in accordance with this Memorandum will follow.

Dated: September 30, 2015           *s/Gerald B. Cohn*
                                    GERALD B. COHN
                                    UNITED STATES MAGISTRATE JUDGE